### Francis Bacon *vs.* The Thirteenth School-District in Barnstable.

To recover the amount of a school-district tax illegally assessed and collected, the remedy is by action against the school-district, not the town or the assessors.

It is no defence to an action against a school-district to recover the amount of an illegal tax collected from the plaintiff under a vote of the district, that the town treasurer advanced to the defendants the whole amount of the assessed tax before the collection from the plaintiff of his proportion thereof.

A new school-district created by vote of a town uniting two old districts has not authority to raise money by a tax to repay to one of the old districts the proportion of the value of a school-house existing therein at the time of the union, for which the other old district would have been liable had it been built by the new district afterwards.

By the vote of a town uniting two school-districts therein, the town is so " districted anew " in the sense of Gen. Sts. c. 39, § 25, as to make necessary a new certificate of the assessors before the estate of a non-resident, previously taxed in one of the old districts, can be taxed in the new one.

Contract for money had and received by the defendants to the plaintiff's use, being the amount of a school-district tax alleged to have been illegally assessed upon the plaintiff by the assessors of the town of Barnstable in behalf of the defendants, and collected by the town collector, and paid to the town treasurer, and by him paid to the defendants.

The case came before this court on appeal from a judgment for the plaintiff entered in the superior court on agreed facts, which were substantially as follows :

In the year 1858, and ever since, the plaintiff, who was not a resident of the town of Barnstable, owned certain real estate there which was then duly assigned for taxation to the then nineteenth school-district. At the annual town meeting in March 1865, upon an article in the warrant " to see if the town

will unite the thirteenth and nineteenth contiguous school-districts," it was voted "that school-district number thirteen be enlarged by adding to it the whole territory now contained in district nineteen, the latter district being extinguished."

At a meeting of district thirteen, which had been held in January, a committee reported that they had conferred with a committee of district nineteen and had agreed with them to select a joint committee "to prize the property of the thirteenth district, and the nineteenth to pay their part of the same according to the town tax;" and at another meeting, in February, the report of the appraisers had been made, appraising "the school-house and surroundings of the thirteenth district at the sum of sixteen hundred and seventy-five dollars."

At another meeting of district thirteen, held on March 16, (after the annual town meeting,) it was voted "to raise fourteen hundred and fifty dollars, to meet all necessary expenses in altering and . enlarging the school-house;" and a building committee was appointed, and it was further voted "that the above committee assess only the amount necessary to be expended;" and an additional vote was passed "to authorize the building committee to have the sixteen hundred and seventy-five dollars assessed and properly collected." At a further meeting, in June, it was voted, "to reconsider the votes whereby the district voted to raise the sum of thirty-one hundred and twenty-five dollars;" and then it was voted "for the old nineteenth district now connected with the thirteenth, to raise a sum of money according to the town taxes equal to the appraisal of the school-house belonging to the old thirteenth district, the same to be expended, if necessary, in enlarging the school-house;" and it was resolved "that the vote last passed means for the assessors to ascertain what per centage sixteen hundred and seventy-five dollars is in the taxable property of the old thirteenth district, and assess a like per centage on the old nineteenth district." And at still another meeting, held in July, it was voted "to reconsider the votes of the last meeting respecting raising and assessing money and to adopt the plan previously adopted by the district at a meeting held on March 16."

Thereupon the clerk of the defendant corporation duly certified to the assessors of the town the votes of the school-district to raise thirty-one hundred and twenty-five dollars, which sum they assessed in the usual manner; and their warrant to the collector directed him to pay the amount to the town treasurer on or before December 1, 1865. The defendant corporation received from the town treasurer on December 3, 1865, the whole sum; and, at a meeting, on December 6, it was voted " that the district retain what money now remains, or may accumulate, to be disposed of in the future as the district shall determine."

One hundred and three dollars and fifty-six cents of the whole amount was assessed upon the real estate of the plaintiff; and was paid by him, under written protest, to the collector, on January 28, 1866. It was agreed that no other assignment of the plaintiff or of his property was ever made to the thirteenth school-district, except as above stated ; and the plaintiff alleged no error affecting the legality of the tax except such as may exist in such assignment and in the votes of the district relating to the tax.

*J. M. Day*, for the plaintiff.

*H. A. Scudder*, for the defendants. **1.** No error is apparent in the records of the district. The purpose of the votes to raise the money was to cover the appraised value of the school-house already existing, and the estimated expense of necessary repairs thereon, all of which was expressed with sufficient certainty and was legal. Gen. Sts. *c.* 39, § 18.

**2.** The two districts were legally united. St. 1861, *c.* 132, §§ 1, 2. A change of name or an enlargement of territory of a school-district does not affect its identity so as to require a new assignment of real estate of non-residents in the town. *Taft* v. *Wood*, 14 Pick. 367. *School-District in Stoneham* v. *Richardson*, 23 Pick. 68. Gen. Sts. *c.* 39, §§ 1, 24, 25. The new district embraced the whole territory of that to which the plaintiff's estate had been assigned. The union was not a new districting, but only an enlargement of both districts with a new name as to one. Each district remained the same legal corporation, only enlarged. The plaintiff thus was taxed in the same

district as before the union, and no new assignment was neces-sary.

3. If anybody is liable to the plaintiff in this action, it is not the defendants, for the assessors were not their agents, but the agents of the town. At any rate, the defendants are not liable in this form of action. The plaintiff did not pay his tax till January. The defendants received their money in December. If the tax was unlawfully assessed and collected, the plaintiff's money was never collected and paid to the defendants' use. Gen. Sts. *c.* 39, § 28. *Joyner* v. *School-District in Egremont,* 3 Cush. 570–573.

WELLS, J. The plaintiff's only remedy is by suit against the school-district. Gen. Sts. *c.* 39, § 17. The assessors are not liable. Gen. Sts. *c.* 11, § 51. Nor the town. *Perry* v. *Dover,* 12 Pick. 206. *Joyner* v. *School-District in Egremont,* 3 Cush. 567. The fact that the amount of the tax was paid over to the district before it was received by the town treasurer from the collector, or by the collector from the plaintiff, can make no dif-ference. In order to sustain the action it is not necessary that the identical money paid by the plaintiff should have come into the hands of the defendants. The defendants have the avails of a tax levied upon the plaintiff and paid by him. The collector and the treasurer of the town were mere agents for its receipt and transmission to the defendants. The liability of the school-district arises from the illegality of the assessment, and the col-lection of the tax from the plaintiff. *Ellis* v. *School-District in Seekonk,* 11 Gray, 487. If actual receipt by the officers of the school-district, from the treasurer of the town, were necessary before the action could be brought, the defendants cannot deny such receipt merely because it was advanced to the district in anticipation of its actual collection from the plaintiff.

It appears to the court that the tax was an illegal one upon two grounds.

First, the amount to be raised, as certified by the clerk to the assessors, was thirty-one hundred and twenty-five dollars. The records of the district, which are made part of the case, show that, of this sum, sixteen hundred and seventy-five dollars

represented the appraised value of the school buildings already
in the district, having been the property of the old school-district
No. 13; and fourteen hundred and fifty dollars was the sum
estimated to be an equivalent contribution from the old school-
district No. 19, according to the per centage of town taxes. It
is manifest from the whole proceedings that the latter sum was
in reality all that was to be raised for the uses of the district;
the former sum being intended to repay the old district No. 13,
or its inhabitants, for the school buildings then existing. Prac-
tically then, so far as the tax was imposed for any proper present
or future uses of the school-district, it was levied exclusively
upon that part of the new district which had been added to it
from the old nineteenth district. This was declared to be the
intent and purpose of the vote to raise money, by the record of
the meeting held in June. But, as it was obvious that a tax
could not be levied upon the old nineteenth district as a separate
district, after it had been united with the thirteenth by vote of
the town, and that such a tax upon a part only of the new dis-
trict would be utterly void, a new meeting was called in July,
by which the action of the June meeting was rescinded, and it
was voted to adopt the original plan. This plan was to raise
the nominal sum of thirty-one hundred and twenty-five dollars,
with the view to neutralize so much of the burden as would fall
upon the old district No. 13, by applying sixteen hundred and
seventy-five dollars of the amount raised, in repayment to them
of that sum for the school buildings which had previously be-
longed to that district. But the illegality of the object is not
obviated by the form of the proceedings by which it is sought to
be attained. By the Gen. Sts. c. 39, § 3, towns are empowered,
upon abolishing the school-districts therein, to make such com-
pensation for the property of the several districts thus taken by
the town, as will secure an equalization or proportionate contri-
bution from all parts of the town for the property which thereby
becomes the common property of the whole town. But no such
authority is anywhere given to school-districts. It would be
unsafe to permit such a power to be exercised. The power to
create and to abolish school-districts, to determine their limits,

to enlarge or reduce their extent, to unite two or more districts into one, is vested exclusively in the town. The town may exercise its power for either of these purposes without the consent of the districts to be affected thereby. *School-District in Stoneham* v *Richardson,* 23 Pick. 62. *Blackstone* v. *Taft,* 4 Gray, 250. Gen. Sts. *c.* 39, § 1. St. 1861, *c.* 132. The district cannot impose conditions upon such changes, nor can it impose upon those who are thus added to the district the burden of paying their proportion of the cost or value of the property previously belonging to the district. Such property belongs to the district in its corporate capacity, and the town, not the district, must determine from time to time what persons and estates shall compose that corporation. The property is held by the district, not for its own corporate use, nor the use of its inhabitants, as property, but as a means for performance of an important function of public service. The responsibility of this public service is upon the town. School-districts are organized for convenience of its local administration. But the district property, created for public purposes, by means of the power of taxation, is none the less devoted to the public service, and held as a trust therefor, in subordination to the general power of the town. Upon the creation of the new district, the two former districts ceased to exist as districts, except so far as might be necessary to secure the rights of those having claims against or contracts with them. The property of each became immediately vested in the new district, subject to such outstanding rights. *School-District in Stoneham* v. *Richardson,* 23 Pick. 62–69. *School-District in Danvers* v. *Tapley,* 1 Allen, 49. It could not therefore be treated as property in which the inhabitants of the old district No. 13 had such an interest as would entitle them to sell it to the new district and convert the proceeds to their private use and benefit. The attempt to raise money, for the accomplishment of that purpose, must be regarded as illegal and unauthorized in any aspect of the case. Perhaps upon this ground the plaintiff would be entitled to recover back only such a proportion of the tax paid by him as would correspond to the amount of the sum raised for the unauthorized purpose.

**But** the second objection goes to the whole amount of the tax assessed upon this plaintiff. He was a non-resident. The lands of non-residents form no part of the school-districts within which they happen to lie. They are not taxable in any district merely by reason of being embraced within its territorial limits. So far as they are a source of revenue for school purposes, they are treated as a fund for the common benefit of the town, to be applied wherever it shall best suit the public interests in the adjustment of the districts. *Taft* v. *Wood,* 14 Pick. 362. They àre protected against undue taxation in the same manner as lands of residents, and cannot be changed " from one district to another having a different school-house," oftener than once in ten years. This protection is secured by the provision of the Gen. Sts. *c.* 39, § 25, which requires the assessors of the town to determine in what district such land shall be taxed, and their determination to be certified in writing and recorded by the clerk. When this has been done, the lands are to be taxed " in such district accordingly until the town is districted anew."

In 1858 the plaintiff's lands were assigned to district No. 19. They have never been assigned to district No. 13. To include them in the taxation for school-houses in that district is to subject them to burdens for which there is no determination of the assessors certified and recorded as required by the statute. By uniting school-district No. 19 with district No. 13, the town was " districted anew" so far as to make a new certificate of the determination of the assessors necessary before the plaintiff's lands could be taxed in the new district. Whether that change exhausted the right of the town for that decade; *Gustin* v. *School-District in Danvers,* 10 Gray, 85 ; or whether the St. of 1861, *c.* 132, gives the right to unite districts without restriction as to time, are questions which it is not necessary now to determine. The tax being illegally assessed upon the plaintiff's lands, he is entitled to recover the same according to the agreed statement.